226 N.J. Super. 487 (1987)
544 A.2d 906
ARSENIO CUETO, REINALDO CUETO, AND MARIA CUETO, HIS WIFE, PLAINTIFFS,
v.
ALLSTATE INSURANCE CO., JORGE VEGA AND NEW JERSEY DIVISION OF MOTOR VEHICLES, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided October 20, 1987.
*488 Mark Gertner for plaintiffs (Robert Joel Marmorstein, attorney).
James J. Maloney, Jr., for defendant Allstate (Nelson H. Murphy, attorney).
RODRIGUEZ, J.S.C.
This written opinion supplements the court's oral decision. The issue presented by the motion and cross motion for summary judgment in this case is, whether an innocent purchaser of a stolen motor vehicle can recover, under the comprehensive coverage of his insurance policy, for loss of his vehicle, when it *489 is returned by the police to the rightful owner. The issue appears to be one of first impression in New Jersey.
The following facts are uncontroverted. Plaintiff purchased a motor vehicle in August 1985 from defendant Jorge Vega (hereinafter "Vega") for a cash consideration of at least $8,000.[1] Vega delivered to plaintiff a certificate of ownership, or title, which indicated that the registered owner was Janet Rosenberg of Fort Lee, NJ. When it was delivered, the reverse side of the title form contained a signature purporting to be that of the seller which read "Janet Rosenberg," and was dated August 27, 1985. The plaintiff's name and address were inserted in the buyer's portion. The plaintiff took this "title" to a local motor vehicle agency on August 26, 1985, paid the required fees and sales tax and obtained a certificate of ownership in his name. The discrepancy between the dates of sale and issue of the new title was apparently not noticed by the clerk in the motor vehicle agency. However, on August 27, 1985, the supervisor of the agency contacted the New Jersey State Police (NJSP) to investigate this transfer. The typing on the title form and validation stamp were suspicious. An investigation was initiated by the State Police. On August 28, 1985, the plaintiff added the subject vehicle to his existing automobile insurance policy issued by Allstate. The policy included comprehensive coverage for direct and accidental loss to the vehicle.
On November 16, 1985, the subject vehicle was involved in an automobile accident. The NJSP concluded its investigation on November 22, 1985. The investigation disclosed the following: (1) the subject motor vehicle had been stolen from Sansone Datsun of Avenel, N.J.; (2) the certificate of ownership or title form had been stolen from a New Jersey Motor Vehicle Agency, and (3) the Janet Rosenberg whose name, address and *490 signature appeared on the "title" had never owned the vehicle in question and denied any knowledge of plaintiff or Vega. Thereafter, the subject vehicle was returned to its rightful owner. The plaintiff filed a claim against defendant Allstate for property damage under the collision coverage of his automobile insurance policy. Subsequently, plaintiff filed the present suit for loss of the vehicle under the comprehensive coverage of the policy.
Plaintiff moves for summary judgment against defendant Allstate, and Allstate has filed a cross motion against the plaintiff. The policy's comprehensive coverage clause reads as follows:
"Part F
Coverage For Damage to your Auto
Coverage HH or TT
Insuring Agreement
We will pay for direct and accidental loss to your covered auto, including its equipment, minus any deductible shown on the Declaration."
Plaintiff contends that: (1) as a bona fide purchaser,[2] he had an insurable interest in the vehicle although he was not the legal owner; (2) he suffered a loss when the vehicle was returned to the rightful owner, and (3) the comprehensive clause entitles him to receive payment from Allstate for this loss. The court agrees with the first and second contentions but rejects the third.
Insurance policies should be construed liberally in favor of the insured so that coverage is afforded to the full extent that any reasonable interpretation would allow. Kievit v. Loyal Protective Life Ins., 34 N.J. 475 (1961); Linden Motor Freight Co. v. Travelers Ins. Co., 40 N.J. 511 (1963). The general rule of construction is that if the controlling language of a policy will support two meanings, one favorable to the *491 insurer and the other to the insured, the interpretation favoring coverage will be applied. Butler v. Bonner and Barnewall, Inc., 56 N.J. 567 (1970). Recognizing the position of a layman with respect to insurance policies, which are prepared and marketed by the insurer, New Jersey courts have endorsed the principle of giving effect to the reasonable expectation of the insured, for the purpose of rendering a fair interpretation of the boundaries of coverage. Di Orio v. N.J. Mfg. Ins. Co., 79 N.J. 257 (1979).
What then was the reasonable expectation of plaintiff when he insured the motor vehicle? Can the language of the policy be fairly interpreted to encompass his expectations?
Someone insuring a motor vehicle for comprehensive loss is seeking to protect it against a future risk of damage, destruction, theft or other loss. The insured wants to be compensated if the vehicle cannot be used or enjoyed in the manner for which it was acquired. It is irrelevant to the insured's expectation whether the loss is due to negligent conduct or an intentional act, or whether the insured or someone else is responsible for the loss. The expectation is protection of the vehicle against a risk. A risk is a future event that cannot be foreseen and against which the insured cannot take preventive measures. The confiscation of a vehicle by the police while enforcing the property rights of the true owner is not a risk within the expectation of a purchaser of automobile insurance.[3] An insurer does not normally review or examine a *492 vehicle's chain of title before issuing a policy. It relies on the insured's assertion of ownership[4]. Therefore, a policy holder cannot reasonably expect that the policy will insure the legal sufficiency of the transaction by which the vehicle was acquired. Put another way, the policy insures risk not title.
Unlike a risk, a defect in title usually has occurred before a policy of insurance is issued, can be prevented by the exercise of due care on the part of the insured and can be discovered by a review of title. When someone purchases a stolen vehicle, albeit innocently, the loss occurs at the time of acquisition (when the purchaser has parted with the consideration) and not when the theft is detected. An insured cannot reasonably expect to purchase a vehicle and then obtain a policy which will cover a loss which has already occurred. The language in the policy itself negates that expectation. Part H (Policy Period and Territory) at page 28, limits coverage to losses occurring " during the policy period as shown in the Declaration." Moreover, an insured can prevent a defect in title by the exercise of reasonable diligence. For example, a comparison of the serial numbers on the vehicle and on the "title" would have revealed a discrepancy to the plaintiff.
Even if the court concludes that the expectation urged by the plaintiff is reasonable, the language of the controlling clause: "we will pay for ... loss to your covered auto ..." can *493 not fairly be read to include loss of the auto due to its return to the rightful owner.
While numerous other courts have considered whether an innocent purchaser of a stolen auto can look to his insurer for coverage for loss or damages to the vehicle (see footnote 3), only two decisions involved facts similar to the present case, i.e., loss due to the assertion by the true owners of their superior right to possession. In Reznick v. Home Ins. Co., 45 Ill. App.3d 1058, 4 Ill.Dec. 525, 360 N.E.2d 461 (App.Ct. 1977), under similar facts, an appellate court in Illinois held that the loss was covered by the comprehensive provisions of the automobile's policy. However, the controlling language of the policy issued to Reznick defined loss as a direct loss of or damage to the automobile except loss caused by a collision. In this case the language of the policy limits coverage to loss to the vehicle. In Smith v. State Farm, 231 So.2d 193 (Fla.Sup. Ct. 1970), the following facts were presented. A car was stolen from plaintiff, a bona fide purchaser for value. The police recovered the car and ascertained that it was a stolen vehicle when the plaintiff had purchased it. The Supreme Court of Florida held that the plaintiff was entitled only to damages occasioned by the temporary loss of use of the car. In doing so the Supreme Court apparently agreed with the dissent of a judge of the appellate court who observed: "... the plaintiff is suing for full value of the automobile. The loss of the full value of the automobile was caused by a prior owner's interest and not the theft. Though an insurable interest existed in the plaintiff, and this interest could be insured against all but the rightful owner, it cannot extend to protect the named insured against the interest of the true owner." Smith v. State Farm, 220 So.2d 389, 389 (Fla. Dist. Ct. App. 1969).
Accordingly, the plaintiff's motion for summary judgment is denied, and defendant Allstate's cross motion for summary judgment is granted.
NOTES
[1] There is a dispute as to the amount. The plaintiff claims that he paid $11,000 cash. However, the figure is not material to the resolution of this motion.
[2] A bona fide purchaser of a stolen motor vehicle has good title against everyone but the true owner. Norris v. Alliance Ins. Co. of Philadelphia, 1 N.J. Misc. 315 (Sup.Ct. 1923).
[3] A claim for collision damage, which was originally pursued and then abandoned by the plaintiff, would be a covered loss under the facts of this case. Norris v. Alliance Ins. Co. of Philadelphia, 1 N.J. Misc. 315 (Sup.Ct. 1923), Savarese v. Hartford Fire Ins. Co., 99 N.J.L. 435 (E. & A. 1923), hold that the purchaser of a stolen automobile's right to possession against all but the rightful owner is a right that gives the purchaser an insurable interest. See also Kutner Buick v. Strelecki, 111 N.J. Super. 89, 97 (Ch.Div. 1970); Friedman v. Royal Globe Ins. Cos., 137 N.J. Super. 192, 197 (Law Div. 1975). Numerous other states have considered this question, with a marked division of authority. See Annotation, Automobile Fire, theft, and collision insurance: insurable interest in stolen motor vehicle, 33 A.L.R.3d 1417 (1970).
[4] The policy issued by Allstate provides in its first paragraph (page 3):

"Agreement
.... By acceptance of this policy you agree:
a) that the statements in the Declarations are your representations;
b) that this policy is issued in reliance upon the truth of those representations; ...."
One of the statements in the Declarations is a representation of ownership of the vehicle to be insured. Under the DEFINITIONS section, "your covered auto" is defined, among other things, as a private passenger auto on the day you become the owner, (subparagraph 3, page 4) [Emphasis added].